**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LANCE POUGH, | ) | CASE NO. 1:15-CV-772 |
| | ) | |
| Petitioner, | ) | JUDGE HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| JASON BUNTING, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | (Doc. Nos. 5, 8, 11, 13, 23) |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Lance Pough ("Petitioner" or "Pough") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Pough is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Pough*, Case No. 00-CR-280 (Trumbull County Nov. 30, 2000). Also before the Court are: (1) Petitioner's motions to stay proceedings (doc. no. 5), to amend his petition (doc. nos. 8, 11), and for appointment of counsel (doc. no. 23); and (2) the State's motion to dismiss the habeas petition as, *inter alias*, a second or successive habeas petition (doc. no. 13).

For the reasons set forth below, it is recommended that: (1) the motion to dismiss (doc. no. 13) be DENIED; and (2) the petition and Petitioner's pending motions (doc. nos. 1, 5, 8, 11, 23) be TRANSFERRED to the Sixth Circuit.

**I. Factual Background**

**A. Introduction**

The magistrate judge who reviewed Petitioner's prior § 2254 petition noted the

following relevant facts:

> The facts behind Pough's state conviction are relatively straightforward. Pough was named on May 5, 2000 in a secret indictment in Trumbull County charging him with one count of aggravated murder with death penalty specificatioins, a firearms specification, and one count of conspiracy to commit murder. The charges arose from the 1998 murder of Braderick McMillian who was operating as a federal informant in a crack cocaine transaction in which Pough was the seller.
>
> Already facing federal drug charges at the time of indictment on these state charges, Pough sought a comprehensive plea agreement with both federal and state prosecutors. After negotiations, Pough, in his state case, agreed to plead guilty to the conspiracy count and to cooperate with the state in its investigation of the murder. In return, the state dropped the capital murder charge and, among other things, agreed that, while any state sentence was being served concurrently with his federal sentence, Pough would be incarcerated in a federal prison.[1]
>
> Under this agreement, Pough pled guilty to a single count of conspiracy to commit murder, with a firearms specification. The state, in turn, moved the trial court to drop the capital murder count. Following a hearing, the trial court accepted Pough's plea, nolling the first count of the indictment. [In November 2000,] the court sentenced Pough to a term of fifteen years to life, along with three years for the firearms specification.

*Pough v. Ohio*, No. 4:04-CV-1427, 2006 WL 3241791, at *1-2 (N.D. Ohio Nov. 7, 2006)

(Economus, J., adopting the report and recommendation of Baughman, M.J.) ("*Pough*

---

[1]The terms of the plea agreement provided, *inter alias*, that Petitioner would receive credit for time served and, if he was released from federal detention prior to serving at least 17 years, he would be returned to Ohio custody to serve the remainder of his sentence. *State v. Pough*, No. 2010-T-0117, 2011 WL 2982332, at * 1 (Ohio Ct. App. July 11, 2011) ("*Pough III*").

2

*II*").² At the time of his state court sentencing, Petitioner signed an acknowledgment that his state sentence also included a five-year term of post-release control. (Doc. No. 13-1 at Ex. 4.)

### B. Prior State Court and Federal Habeas Proceedings

In December 2000, Pough, through counsel, appealed his conviction to the state appellate court, arguing that: (1) his guilty plea was not knowing and voluntary because he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress unspecified evidence; and (2) the trial court erred as a matter of law in accepting his guilty plea. *State v. Pough*, No. 2000-T-0151, 2002 WL 31813100, at *1-2 (Ohio Ct. App. Dec. 13, 2002) ("*Pough I*"). In December 2002, the state appellate court affirmed Petitioner's conviction. *Id*. at *6. In April 2003, the Ohio Supreme Court declined jurisdiction over Petitioner's appeal. *State v. Pough*, 786 N.E.2d 901 (Table), 98 Ohio St.3d 1538 (Ohio 2003).

Thereafter, Petitioner, *pro se*, filed various motions, attempting to: (1) reopen his appeal; and (2) obtain post-conviction relief. *Pough II*, 2006 WL 3241791 at *3. None were successful. *Id*.

In July 2004, Pough, *pro se*, filed a § 2254 petition and various amendments in this Court, which the prior magistrate judge construed to assert grounds for relief arising out of the allegedly ineffective assistance of Petitioner's trial counsel, as well as the alleged failure of state officials to provide Petitioner with sufficient library resources to

---

² Review of the docket in Petitioner's federal criminal proceedings reflects that, in February 2000, Petitioner pleaded guilty to one count of conspiracy to distribute cocaine. (USDC dkt. no. 4:99-CR-234, entry at 2/14/2000). In July 2000, the Court sentenced Petitioner to a 204-month, or 17-year, term of imprisonment. (*Id*., entry at 7/20/2000.)

3

perfect his post-conviction claims in state court. (Doc. No. 13-1 at Ex. 30.) On July 28, 2015, Magistrate Judge Baughman issued a report and recommendation that this Court dismiss Pough's petition as procedurally defaulted and without merit. (*Id*. at 29.) Petitioner did not file objections to the report and recommendation, and, on November 7, 2006, the Court adopted the report and recommendation and dismissed the § 2254 petition. *Pough II*, 2006 WL 3241791 at *1. Pough sought a certificate of appealability, which the Sixth Circuit denied in June 2007. (Doc. No. 13-1 at Ex. 33.)

**C.    Relevant Subsequent State Proceedings**

**1.    2009 State Court Motions**

In October 2009, Petitioner, *pro se*, filed a motion "for sentencing clarification" in the state trial court. (Doc. No. 13-1 at Ex. 34.) Petitioner contended that he believed that the state trial court had failed to give him credit for time he served in federal custody prior to his indictment in state court. (*Id*.) He also argued that, pursuant to the terms of his plea agreement in state court, he would serve 17 years in federal custody and would not be placed in an Ohio facility after the expiration of his federal sentence, but, rather, would be released. (*Id*.) After the State filed a response, Petitioner filed various motions related to his request for sentencing clarification, including a request for resentencing *nunc pro tunc*. (*Id*. at Exs. 35-41.) In November 2010, the state trial court denied all of Petitioner's motions. (*Id*. at Ex. 42.)

Petitioner, *pro se*, filed a notice of appeal in the state appellate court, asserting various errors related to the state trial court's denial of his request for sentencing clarification or resentencing. (Doc. No. 13-1 at Exs. 44, 45.) In July 2002, the state

4

appellate court affirmed the trial court's decision. *Pough III*, 2011 WL 2982332 at *1. Petitioner did not file a notice of appeal in the Ohio Supreme Court.

### 2. 2015 State Court Motions

In June 2015, Petitioner, *pro se*, filed a motion "requesting a revised sentencing entry that complies with the substantive provisions of Crim. Rule 32(C)." (Doc. No. 13-1 at Ex. 50.) In the motion, Petitioner noted the state court judgment entry reflecting his sentence did not include the five-year term of post-release control. (*Id.*) He argued that, as a result, the judgment entry was not a final appealable order and, thus, the state trial court should: (1) enter a revised judgment entry; or (2) allow Petitioner to withdraw his guilty plea. (*Id.*)

Also in June 2015, Petitioner, *pro se*, filed a "presentence motion to withdraw the guilty plea for the breach by the State Authorities, ODRC, Adult Parole Authorities." (Doc. No. 13-1 at Ex. 51.) In the motion, he contended that in April 2014, he was returned to Ohio custody and first learned that, upon his release from state custody, rather than serving a term of post-release control, he will be placed on parole supervision. (*Id.*) According to Petitioner, had he been aware that he would receive parole rather than post-release control, he would not have pleaded guilty.[3] (*Id.*)

---

[3] It is the difference between parole supervision and post-release control that underlies the majority of Petitioner's claims in this case. As described by the Ohio Supreme Court, in *State v. Clark*, 893 N.E.2d 462, 470, 119 Ohio St.3d 239, 246 (Ohio 2008), the most distinct difference between the two forms of supervision is the length of incarceration that can result from a violation of the terms of supervision:

> The disparity in the degree of potential limitations on Clark's liberty could be significant, depending upon his sentence. To illustrate this point, we briefly explain how the statutory schemes for postrelease control and parole differ. Defendants

5

Attached to the motion are: (1) a document purporting to be a May 1, 2014 summary of Petitioner's state sentence, which indicates that he is scheduled for a parole hearing on May 5, 2018; and (2) a June 6, 2014 letter from a hearing officer with the Ohio Parole Board, explaining to Petitioner that, because Petitioner received an indeterminate state sentence, he was "not eligible" for post-release control, but, rather, his "release would come via [p]arole." (*Id*.)

In August 2015, the state trial court denied Petitioner's motions related to the post-release control portion of his sentence. (Doc. No. 15-1 at Ex. 59.) Review of the

> convicted of certain classified felonies (not including aggravated murder) are subject to a mandatory period of postrelease control. . . . Postrelease control is a period of supervision that occurs after a prisoner has served his or her prison sentence and is released from incarceration, during which the individual is subject to specific sanctions with which he or she must comply. . . . Violation of these sanctions may result in additional punishment, such as a longer period of control, more restrictions during the control period, or a prison term of up to nine months per violation, subject to a cumulative maximum of one-half of the original stated prison term. . . .
>
> However, an individual sentenced for aggravated murder such as Clark is not subject to postrelease control, because that crime is an unclassified felony to which postrelease-control statutes do not apply. Instead, such a person is either ineligible for parole or becomes eligible for parole after serving a period of 20, 25, or 30 years in prison. . . . Parole is also a form of supervised release, but it is not merely an addition to an individual's sentence. When a person is paroled, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release. . . . If a paroled person violates the various conditions associated with the parole, he or she may be required to serve the remainder of the original sentence; that period could be more than nine months.

6

web site for the Trumbull County Clerk of Courts reveals that, thereafter, Petitioner filed a notice of appeal in the state appellate court. That appeal is currently pending.

**D.    Current Federal Habeas Proceedings**

In April 2015, while his most recent set of state court motions were pending, Petitioner, *pro se*, filed the § 2254 petition in this Court. (Doc. Nos. 1,3.) In it, he asserts the following five assignments of error:

> I.    The state plea was not knowingly, intelligently and voluntarily made because it was illusory, based on an unfulfillable promise, as the terms of his plea agreement weren't fulfilled according to the terms, and language of the plea agreement, all of which result in a violation of his rights under the 14th Amendment of the U.S. and the [D]ue [P]rocess [C]lause of the U.S. Constitution.
>
> Supporting Facts: The state authorities, state prosecutors, ODRC officials, adult parole authorities stated, after executing his state sentence on 4-21-2014 that he will not be placed in [post-release control] for 5 years when released and the sanction for violating [post-release control] supervision do not apply to him because he has parole, despite their promises and considerations making up terms of his plea agreement on page 2. This amounts to a breach of plea and results in his plea being involuntary. This conduct violates his federal due process rights under the 14th Amendment of the U.S. [Constitution].
>
> II.   The plea agreement, the judge's intentions and the oral pronouncement of sentence controls [*sic*] over the written journal entry: This amounts to a violation of the 14th Amendment to due process of the United States Constitution.
>
> Supporting Facts: The ODRC, parole authorities, BOSCO violated Petitioner's federal rights by relying on the journal entry instead of the sentencing record, the judge's intentions and the plea agreement terms when executing the sentence whereas Petitioner is

7

      supposed to have [post-release control] supervision for 5 [years] instead of parole supervision. This amounts to a violation of due process under the 14th Amendment to the U.S. Constitution.

III.    The plea agreement was illegal and involuntary whereas its has terms and promises in it that are not authorized pursuant to the permissible state statute for the crime (unclassified felony) in which petitioner pled guilty to: This claim is in violation of the 14th Amendment to due process clause of the United States Constitution.

      <u>Supporting Facts</u>: The state plea agreement has terms and promises, see page 2, that are not authorized pursuant to the statute (unclassified felony) that Petitioner was convicted, pled guilty to and was sentenced to. *See U.S. v. Greatwalker*, 285 F.3d 727 (8th Cir. 2002). *See also Pickens v. Howes*, 549 F.3d 377 (6th Cir. 2008).

IV.    The state plea agreement is ambiguous whereas it has 2 types of supervision in it – [post-release control] supervision and parole, and it is violative of due process and a violation of Petitioner's federal rights under the U.S. Constitution for the ODRC, state authorities (state prosecutors), and the adult parole authorities to schedule Petitioner for a 5-5-2018 parole hearing instead of placing him on [post-release control] supervision . . . which is more lenient and the max is only five years and less than parole supervision.

      <u>Supporting Facts</u>: This claim comes about because the ODRC, and state prison officials executed his sentence on April 21, 2014 and scheduled him for a parole hearing (5-5-2018) instead of scheduling/placing him on [post-release control] supervision for 5 years whereas the pleas agreement is ambiguous as it has both types of supervision in: parole and [post-release control] whereas [post-release control] supervision, see page 2, is more lenient and he is entitled to be placed on [post-release control] supervision.

8

> V. The Petitioner['] s rights to due process under federal law and the U.S. Constitution [have] been violated by the state authorities, ODRC, adult parole authorities, the state judge, by not giving him his credit (jail) on his state sentence for the "entire time" he spent in federal custody from the first day of his federal arrest.
>
> Supporting Facts: When defendant petitioner pled guilty in Feb[ruary] 2000 to federal charges in federal court, the instant state crime and conviction and the facts that make up the factual basis for the plea [were] part of the related federal case['] s facts and included in the drug conspiracy as part of the plea agreement factual basis and is clearly labeled as relevant conduct in the federal case. Therefore, it cannot be disputed that not only did the instant crime make up part of the federal drug conspiracy, but also is included in the language of the plea agreement and is relevant conduct in the case. In sum, the state and federal convictions are related as the crime is part of both prosecutions and part of the plea agreement['s] terms.

(*Id*.) Petitioner submitted several documents in support of the petition, including the state court entry reflecting the terms of his plea agreement. (Doc. No. 3-4.)

In May 2015, Petitioner filed a motion for a stay and abeyance to allow him to exhaust his claims in state court. (Doc. No. 5.) In the motion for a stay, Petitioner contends that he was not aware of the constitutional violations asserted in his § 2254 petition until he was returned to state custody in April 2014 and learned that he was not eligible for post-release control. (*Id*.)

Later in May 2015, Petitioner filed a motion to amend his petition, seeking leave generally to amend the contentions in support of his grounds for relief to assert that he was not aware of the constitutional violations until May 1, 2014 when "the computer generated printout" detailing his state sentence was "delivered to him." (Doc. No. 8.) In

9

July 2015, Petitioner filed a second motion to amend his petition, in which he seeks leave to rely upon *Boykin v. Alabama*, 395 U.S. 238 (1969), to support his first ground for relief. (Doc. No. 11.)

Thereafter, the State filed a motion to dismiss the § 2254 petition on several grounds. (Doc. No. 13.)

## II. Law and Analysis

In this case, the § 2254 petition is reasonably construed to assert two separate grounds for relief: (1) the state trial court erred in failing to include the time that Petitioner spent in federal custody prior to his state court indictment in the amount of time credited toward Petitioner's state court sentence; and (2) Petitioner's guilty plea was neither willing nor voluntary because, when he entered his guilty plea, he was unaware that he would be subject to parole, rather than post-release control, upon his release from custody. In the motion to dismiss, the State argues, *inter alias*, that Petitioner's current § 2254 should be dismissed because: (1) the petition asserts non-cognizable claims; and (2) the petition is second or successive because the grounds for relief asserted in the petition attack Petitioner's conviction for complicity to commit aggravated murder, which has already been the subject of a § 2254 petition.

### A. Whether the Petition is Second or Successive

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") greatly restricts the power of federal courts to award habeas relief to state prisoners who have already filed § 2254 petitions. As amended by the AEDPA, 28 U.S.C. § 2244 provides:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in

10

> a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless:
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due dilligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b). Before filing a second or successive § 2254 petition, the AEDPA requires a petitioner to first obtain an order "authorizing the district court to consider" the petition from the appropriate court of appeals. 28 U.S.C. § 2244(a)(3).

The mere fact that a petitioner has previously filed a § 2254 petition does not necessarily mean that a subsequent § 2254 petition is a "second or successive" petition. *In re Salem*, 631 F.3d 809, 812 (6th Cir. 2011) (citing *Panetti v. Quarterman,* 551 U.S. 930, 944 (2007)). Rather, the phrase "second or successive petition" is a term of art "given substance" by the habeas opinions of the Supreme Court. *Slack v. McDaniel,* 529 U.S. 473, 486 (2000). Under the relevant decisions, a subsequent petition filed pursuant to § 2254 is not a second or successive petition if it meets either of two criteria. First, a subsequent petition is not a second or successive petition if the claims asserted in that petition were not ripe at the time an earlier petition was filed.

11

*See Stewart v. Martinez–Villareal,* 523 U.S. 637, 643-46 (1998) (finding that when a second petition presents a claim identical to a claim that was included in an earlier petition but was not yet ripe for review, the court should treat both petitions as a single application for habeas relief), and *Panetti,* 551 U.S. at 942-44 (holding that a petition that presents a claim that was not presented in an earlier petition but would have been unripe had it been presented is not a second or successive petition). Second, a petition is not a second or successive petition if it attacks a state court judgment that was not attacked in the previous petition. *Magwood v. Patterson*, 561 U.S. 320, 330-31 (2010) .

In this case, the State contends that Petitioner's arguments with respect to his guilty plea assert grounds for relief that are second or successive because his arguments attack his conviction for complicity to commit aggravated murder, which has already been the subject of a § 2254 petition. (Doc. No. 13.) Petitioner responds that, because he was not aware until April or May 2014 that he would be placed on parole rather than post-release control, his claims regarding his guilty plea were not ripe at the time of his first § 2254 petition.

The record does not support Petitioner's argument on this point, as it contains multiple instances prior to or contemporaneous with the filing of Petitioner's 2004 habeas petition evidencing that Petitioner was aware that he may receive parole as part of his sentence. For example, the November 2000 plea agreement filed in state court contains language referencing both post-release control and parole supervision: "I have been informed by he Court and understand that I am NOT eligible for probation or community control sanction or (if applicable) that my plea of guilty may result in an additional sentence for a parole or post-release control violation, and/or probation or

12

community control sanction violation and such sentence shall be consecutive." (Doc. No. 3-4.)

Further, in his 2003 post-conviction motions, Pough acknowledged that his sentence included the possibility of parole. In arguing that his trial counsel's errors caused him prejudice, Petitioner repeatedly asserted that, as a result of counsel's errors, Petitioner received a "consecutive" sentence that included parole:

> Petitioner would not be serving a consecutive sentence on the state *with parole* which is consecutive.
>
> * * *
>
> The Defendant would not be serving a state sentence of 18-life with *consecutive parole*.

(Doc. No. 13-1 at Ex. 12 at Page ID # 221, 224 (emphasis added); *see also* Page ID # 241, 276, 278, 281, 344.) Finally, in his 2004 habeas petition, Petitioner argued that he received ineffective assistance of trial counsel when his state court counsel failed to move to suppress certain evidence, including evidence provided by Petitioner while he was cooperating with law enforcement, which would have resulted in Petitioner obtaining a lesser state court sentence:

> [P]rejudice can also be established by the fact that the Defendant's sentence has resulted in consecutive time [as] opposed to concurrent. The state sentence is day for day with no good time [as] opposed to the 17[-year] federal sentence which has good time. The Defendant will be released in 2014 on the federal sentence with good time and will have to return to the state to do an extra 5 [years] or 4 [years] on the 18-life state sentence *as well as consecutive parole on the state.*

(Doc. No. 13-1 at Ex. 23 at PageID # 449 (emphasis added).) In sum, a review of the record in this case reveals that, by the time he filed his 2004 habeas petition, Petitioner

13

was aware that his sentence included the possibility of parole – rather than post-release control. Accordingly, his grounds for relief asserting arguments related to the voluntary nature of his guilty plea were ripe at the time of his 2004 habeas petition. The habeas petition is second or successive.[4]

**B.    Appropriate Relief**

Petitioner's application for habeas relief is second or successive. Petitioner did not obtain the authorization from the Sixth Circuit that is necessary for this Court to consider a second or successive application for habeas relief. Accordingly, this Court lacks jurisdiction to consider any portion of Petitioner's current habeas petition. In its motion, the State requests that this Court dismiss the petition in its entirety.

Prior to the Supreme Court's decision in *Magwood*, where a petitioner filed a second or successive habeas petition in the district court, Sixth Circuit case law required the district court to transfer that petition to the appellate court pursuant to 28 U.S.C. § 1631. *See In re Sims*, 111 F.3d 45, 46-47 (6th Cir. 1997). However, in

---

[4] To the extent that Petitioner argues that his fifth ground for relief is not barred by the prohibition on second or successive habeas petitions, this Court lacks jurisdiction to consider the claim. In Ohio, a statute governs the calculation of the amount of time for which a convicted defendant receives credit toward his prison sentence based on pre-conviction incarceration. *See* Ohio Rev. Code § 2967.191 (West 2012). Specifically, prison officials reduce a convicted defendant's stated prison term or the maximum term of his imprisonment "by the total number of days that the prisoner was confined for any reason arising out of the offense for the prisoner was convicted and sentenced. . . ." *Id*. In his fifth ground for relief, Petitioner argues that the trial court erred in failing to credit him for the time he spent in federal custody prior to his state court indictment. Petitioner argues that the facts underlying his state and federal offenses were sufficiently related to merit credit for the time he spent in federal custody. This argument asserts an error of state law. Accordingly, even if the claim is not second or successive – because the claim was not yet ripe when Petitioner filed his first habeas petition – this specific issue is not cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

*Magwood*, the Supreme Court observed that, if the petitioner's habeas petition had been second or successive, the district court would have been required to dismiss the petition because the petitioner had not first obtained the required authorization from the relevant circuit court. *Magwood*, 561 U.S. at 331 ("Thus, if Magwood's application was 'second or successive,' the District Court should have dismissed it in its entirety because he failed to obtain the requisite authorization from the Court of Appeals."). Since the Supreme Court decided *Magwood*, at least one other judge of this Court, relying on that language from *Magwood*, has dismissed – rather than transferred – a second or successive habeas petition filed without authorization from the Sixth Circuit. *See Askew v. Bradshaw*, No. 5:12-CV-131, 2013 WL 5279357 (N.D. Ohio Sept. 18, 2013) (Gaughan, J.) (adopting the report and recommendation of Magistrate Judge McHargh). Other judges have continued to transfer second or successive petitions, pursuant to *Sims*. *See, e.g., Hines,* 2012 WL 5383505 at * 1 (Katz, J.)

The Sixth Circuit has not addressed the question whether *Magwood* requires the dismissal – rather than the transfer – of second or successive habeas petitions. In *In re Smith*, 690 F.3d 809 (6th Cir. 2012), the district court transferred the petitioner's habeas petition to the Sixth Circuit for the circuit court to decide, in the first instance, whether the petition was second or successive. The Sixth Circuit vacated and remanded, concluding that there was "no mechanism for uncertain district courts to transfer petitions to us for our guidance on their jurisdiction to hear a case." 690 F.3d at 810. *Smith* was decided after *Magwood*. In deciding *Smith*, the Sixth Circuit reiterated the holding of *Sims* that "district courts [should] transfer . . . 'successive' petitions to our

15

court for want of jurisdiction under [§ 1631] rather than dismiss them outright." *Id*. Although the issue of whether *Magwood* requires district courts to dismiss successive habeas petitions was not before the Sixth Circuit in *Smith*, that decision is the Sixth Circuit's most recent discussion of the procedure set forth in *Sims*. Nothing in *Smith* calls into doubt the efficacy of the holding in *Sims*. Further, given that the issue in *Magwood* was whether the petitioner's application for relief was second or successive – and not whether the district court should have transferred or dismissed the petition – *Magwood* does not require this Court to question longstanding Sixth Circuit precedent in this context. Accordingly, in this case, the petition and the remaining motions, pursuant to *Sims*, should be transferred to the Sixth Circuit rather than dismissed. Thus, the motion to dismiss (doc. no. 13) should be DENIED.

### III. Conclusion

For the reasons given above, it is recommended that: (1) the motion to dismiss (doc. no. 13) be DENIED; and (2) the petition and Petitioner's pending motions (doc. nos. 1, 5, 8, 11, 23) be TRANSFERRED to the Sixth Circuit.


Date: January 11, 2016                     /s/ *Nancy A. Vecchiarelli*
                                           United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985)*, reh'g denied,* 474 U.S. 1111.